UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MATTHEW STEPHEN HILYARD,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

Case No. 2:13-cv-226

HON. TIMOTHY P. GREELEY

## OPINION

In January 2010, Plaintiff Matthew Stephen Hilyard filed an application for disability and disability insurance benefits. See Transcript of Administrative Hearing at pages 128-138 (hereinafter Tr. at ___). Plaintiff's application was denied initially and Plaintiff requested an administrative hearing before an Administrative Law Judge (ALJ). Tr. at 89. ALJ Robert L. Bartlet, Jr., held a hearing on July 2, 2011. Tr. at 25-61. Plaintiff was represented by Attorney Gabe Cameron. At the hearing, Plaintiff and vocational expert Jane Carmichael testified. On February 3, 2012, the ALJ issued a decision finding Plaintiff not under a disability as defined by the Social Security Act. Tr. at 11-20. Plaintiff filed a Request for review of Hearing Decision/Order which was denied on May 21, 2013. Tr. at 1-4. Plaintiff then filed this action.[1]

Plaintiff alleges that he is disabled due to back problems since September 30, 2007, and due to depression. The ALJ found that Plaintiff suffered with degenerative disc disease with status post several old thoracic compression fractures. At the time of the hearing, Plaintiff was 33

---

[1] Both parties consented to proceed before a Magistrate Judge on January 29, 2014.

years old. Tr. at 32. Plaintiff received a certificate for corrections from Lake Superior State University, and also was educated as a welder/fabricator. Tr. at 33. Plaintiff was not employed as a corrections officer and had not worked as a welder for two years. Plaintiff's previous employment experience included bartending, maintenance at a golf course and a senior citizen apartment complex, and security at a college and at the Saginaw Chippewa Indian Tribe. Plaintiff also worked as a dishwasher for a few months. Tr. at 36.

Plaintiff indicated that he can only be on his feet 10-15 minutes and cannot lift anything heavy. Tr. at 37. He can lift his 20-pound baby. Tr. at 38. Plaintiff stated that he is unable to sit too long without changing positions due to the pain. *Id*. Plaintiff was told by Psychologist Tonja Acker-Richards that he has bipolar disorder and his physician, Dr. Hooper, came to the same conclusion. Tr. at 39. Dr. Hooper put Plaintiff on a lithium regimen. *Id*. Plaintiff has trouble concentrating and focusing and difficulty sleeping. *Id*. Plaintiff has relationships with his girlfriend, his mother, and his one-year-old, but does not have friends or socialize. Tr. at 40. Plaintiff's mother helps him take care of the baby when his girlfriend is at work. Tr. at 41. Plaintiff's mother and girlfriend take care of the house. Plaintiff states that it is uncomfortable for him to do things physically and most of the time he is sleeping. *Id*.

Plaintiff has exhibited suicidal tendencies and his mother helps by cheering him up. Tr. at 42-43. Plaintiff is no longer able to fish or boat. Tr. at 43. Plaintiff denied abuse of alcohol and drugs. Tr. at 44. Plaintiff received epidermal steroid injections for his back pain. Tr. at 45. However, the injections did not help and were discontinued. Tr. at 59. Plaintiff was taking Oxycodone, lithium carbonate, Ambien, ranitidine and ibuprofen. Tr. at 50. Plaintiff indicates that he has difficulty dealing with other people. Plaintiff indicates that he could not get along with the people he was working with in his surveillance job and his job was terminated as a result. Tr. at 54.

The vocational expert testified at the hearing that a person that is Plaintiff's age and with similar work experience that was limited to light or sedentary work, with minimal interaction with co-workers, supervisors and the public, who could change position from sitting to standing, have regular breaks, and minimal bending, crouching, and stooping could perform a range of jobs including, in the light work category, inspector positions, about 22,000-23,000 jobs in the Michigan economy, assembler position, about 35,000 jobs, and packagers, about 5,000 jobs. In the sedentary work category, there are 3,000 inspector positions, 6,000 assembler positions, and around 4,500 security monitor positions in Michigan. Tr. at 57-58. When it is assumed that, in addition to the physical limitations, the individual would be moderately limited in making judgments on simple work related decisions, with marked limitation understanding, carrying out and remembering simple instructions, and extreme limitation in understanding complex instructions, there would be no positions available in the economy for such an individual. *Id*.

Assuming that an individual Plaintiff's age, education and work experience was limited to lifting and carrying up to ten pounds on an occasional basis, sitting 30 minutes at a time, walking 30 minutes at a time, walking 15 minutes at a time, total in an eight-hour workday, sitting two hours, standing one hour, walking 30 minutes, never reaching or pushing/pulling with either hand, handling, fingering and feeling on either hand on a frequent basis, no use of foot controls, no balancing, stooping, kneeling, crouching, crawling or climbing ladders, no work at unprotected heights, around moving mechanical parts, temperature extremes, only occasional exposure to humidity and weather, occasional exposure to dust, odors, fumes, and frequently could operate a motor vehicle, the vocational expert stated that there are no jobs that could accommodate these limitations. Tr. at 59.

Plaintiff was interviewed by Psychologist Margaret K. Cappone, Ph.D, for the Disability Determination Service. Tr. at 256. Plaintiff stated that he suffered back pain as a result of fracturing several vertebrae when he was 13 years old. *Id*. Plaintiff stated that he was "a professional TV watcher," because he cannot maintain a job and due to the pain that he is experiencing. Tr. at 257. Plaintiff has suffered depression since the accident, and is now moody and grumpy like an old man. *Id*. As a result of the interview, the Psychologist diagnosed Plaintiff with a depressive disorder, not otherwise specified, alcohol abuse, history of chronic self medication, chronic back pain, and a GAF score of 50-55, and indicated that his prognosis was guarded. Tr. at 262.

Plaintiff was examined by Dr. Tama Abel, M.D., at the request of the Disability Determination Service. Tr. at 264-269. Dr. Abel wrote that Plaintiff suffered from a combination of musculoskeletal pain and degenerative disc disease. Tr. at 268. Plaintiff was considered obese and lived a sedentary lifestyle. Dr. Abel felt that weight loss, stretching, and strengthening exercises may show improvement in back pain. *Id*. An x-ray of Plaintiff's spine revealed satisfactory height and alignment of vertebrae. The L5 segment was transitional, partially sacralized on the right, with mild spondylosis at the lumbosacral level. Tr. at 269.

In 2008, Plaintiff was treated with medication for complaints of back pain by Dr. Lloyd Hooper, M.D. Tr. at 288-294. On June 2, 2009, Radiologist Nathan McParlan, M.D, found minimal anterior wedging compression deformities of the mid-thoracic vertebral bodies at T7-T9, and no definite evidence of acute fracture and mild degenerative changes. Tr. at 300. On July 15, 2009, Radiologist Todd Bostwick, M.D., reviewed an x-ray taken of Plaintiff and found that there were mild old anterior wedge compression fractures of T7, T8 and T9 which produced mild exaggeration of the normal thoracic kyphosis centered at T7-8. Tr. at 298. There were mild

degenerative disc changes at T5-6, T6-7, and T8-9 with small posterior disc protrusions seen at T5-6 and T6-7, causing mild to moderate central canal stenosis indenting the thecal sac and slightly touching but not displacing the cord.  At T8-9, there were mild type 2 endplate marrow changes along the anterior superior endplate of T9.  No neuroforaminal stenosis was seen.  *Id*.

Plaintiff was examined by Psychologist Barbara Halazon, Ph.D, at the request of the Disability Determination Service.  Tr. at 309-317.   Psychologist Halazon diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood, with history of alcohol dependence and prescription medicine other than his own, and overuse of his own.  Tr. at 317.  Plaintiff's prognosis was guarded.  *Id*.

Plaintiff was examined by Dr. Richard Gause, M.D., at the request of the Disability Determination Service on April 23, 2010.  Tr. at 319-321.  Dr. Gause concluded that Plaintiff had degenerative joint and/or disc disease in his lumber spine as confirmed by the MRI.  Plaintiff's assertion of depression was currently not treated.  Tr. at 321. Plaintiff exhibited no evidence of joint laxity, crepitance, or effusion.  Plaintiff did not have difficulty getting on and off the examination table, had moderate difficulty with heel to toe walking, no difficulty squatting and rising, but was unable to hop.  Plaintiff's range of motion was mildly impaired in the dorsolumbar spine.  Tr. at 320.

Plaintiff's primary physician, Dr. Hooper, continued to treat Plaintiff with pain medications, including Execution, hydrocodone-acetaminophen, and medication for depression. Tr. at 326-360. Plaintiff was referred to an orthopedic surgeon, Dr. Kevin Jon Lawson, M.D.  An x-ray revealed moderate increase in wedging in the mid thoracic spine which could represent a compression fracture or old deformity.  Tr. at 369.  Plaintiff had moderately prominent kyphosis and a possible old compression fracture with changes in his mid thoracic spine.  *Id*.  An MRI revealed that the thoracic spine showed a stable old mild anterior wedge compression fractures at

5

T7, T8 and T9 which produced mild exaggeration of the normal thoracic kyphosis. Tr. at 377. Dr. Bostwick noted that this was unchanged from the previous study. There was stable mild degenerative disc changes at T5-6, T6-7, and T8-9. Tr. at 378. Plaintiff was also referred to Psychologist Tonja Acker-Richards who indicated that Plaintiff developed bipolar-depression along with his chronic physical pain. Tr. at 375. Psychologist Acker-Richards reported that Plaintiff could not work due to the unpredictable nature of his moods and his severe, sometimes excruciating, physical pain. Tr. at 396. Plaintiff was treated with lithium and experienced mild alleviation of panicky and manic risk taking behavior, but with little effect on his depression and suicidal thoughts. Dr. Hooper opined that Plaintiff's back problems could not be remedied with surgery and his measures to relieve pain had been unsuccessful. Dr. Hooper believed that Plaintiff was disabled. Tr. at 400. Dr. Lawson's nurse indicated that Plaintiff was unable to work with his level of pain. Tr. at 401.

The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Human and Health Serv.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). This Court must affirm the ALJ's findings if sufficient evidence supports the decision even if evidence supports an alternative conclusion.

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step, the analysis

ceases and Plaintiff is declared as such. 20 C.F.R § 404.1520(a). At step one, the ALJ found that Plaintiff was not engaged in substantial gainful activity since September 30, 2007. Tr. at 19. At step two, the ALJ determined that Plaintiff has the severe impairments of degenerative disc disease with status post several old thoracic compression fractures. At step three, the ALJ determined that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. *Id*. At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) provided that there is no more than occasional stooping, bending, twisting or crouching with a sit/stand option and limited contact with others. Tr. at 20. At step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that the claimant could perform. *Id*.

Plaintiff argues that the ALJ committed error by not properly considering the opinions of Plaintiff's treating physicians and treating psychologist and by not properly considering the opinions of the consulting psychologists. Further, Plaintiff argues that ALJ erred by relying upon a single decision maker and/or his own medical conclusions, and the ALJ failed to properly consider the vocational expert's responses.

The ALJ did find that Plaintiff had degenerative disc disease, but did not find that Plaintiff's claim of pain prevented him from performing light work with restrictions. The ALJ concluded that Plaintiff's psychologist's opinion, that Plaintiff had a bipolar disorder, was not supported in the record. Further, the ALJ noted that the main problem mentioned by all the psychologists was Plaintiff's back pain. The ALJ stated that the psychologists' focus should have been strictly on Plaintiff's mental health. The ALJ indicated that his decision came down to pain

7

and credibility. The ALJ noted that the medical evidence was unimpressive in suggesting severe compromise of the back. The ALJ stated:

> Having reviewed the medical evidence and testimony, the undersigned believes that this case comes down to the issues of pain and credibility. While claimant does appear to have some degenerative disc disease, objective findings and medical records in general are fairly unimpressive in terms of suggesting severe compromise of the back. Claimant's obesity does represent a contributing factor that would increase pressure on the back and other weight-bearing joints to some extent, but up to this point, other than some tenderness and complaints of pain with range of motion, there has been neither significant neurological compromise nor any hard findings to suggest a serious orthopedic problem. Claimant has never undergone back surgery, much less even been hospitalized for the back condition, and the one instance where he had been referred for orthopedic evaluation, he was seen by a nurse practitioner, as opposed to Dr. Lawson, for whom the referral was intended. X-rays and MRI scans have shown only mild degenerative changes and old, healed compression fractures of the thoracic spine which claimant had suffered when he was a youngster. A contrast of x-rays between July 2009 and July 2010 has shown no progression or change (compare Exhibits 5F and 10F). The only finding of any significance has been "mild" stenosis without any nerve root impingement. The two consultative examinations (Exhibits 2F and 8F) also found no evidence of nerve root irritation, the only finding being mildly decreased flexion of the back (70°-75° forward flexion compared to a normal value of 90°).
>
> Dr. Hooper has offered an opinion that claimant is disabled, however, he concedes that surgical intervention is not warranted with his contemporaneous progress notes are hardly impressive in terms of significant findings. In fact, treatment records from all sources leave much to be desired. In general, there were a lot of reports of subjective complaints, but nothing to support the extreme degree of pain claimant has alleged. Primary treatment has consisted of narcotic pain medications, and even such use may not be entirely warranted. Most of Dr. Hooper's treatment records consist of over the telephone narcotic refills with the actual visits to the physician rather limited. In a checklist form offered following claimant's last visit on July 20, 2011 he offered all sorts of limitations at the behest of claimant's attorney, some of those limitations making no sense at all, being left unexplained (Exhibits 10F and 13F).

> All sorts of specific limitations were testified to by claimant and apparently in many cases accepted subjectively by his doctor at face value, limitations which if accurate, would make claimant incapable of doing the activities of daily living which he and his girlfriend have previously reported, such as child care, simple meal preparation, taking out trash, shopping, driving, reading, playing video games, mowing grass, visiting family, etc. (see Exhibits 6E-7E and 7F). While testifying at the hearing to being unable to stand more than 10-15 minutes, Dr. Hooper also offering very significant limitations in this respect, it is noteworthy that claimant had previously acknowledged as of June, 2009 that he could not stand "more than a couple hours" suggesting a far greater tolerance (Exhibit 5F). Contrary to the 10 pound lifting restriction also offered by Dr. Hooper, claimant acknowledged at the hearing being able to lift his 20-pound child.

Tr. 17-18.

There is substantial evidence in the record supporting the finding that Plaintiff is capable of performing light work, which is available in the region. This Court must uphold the Commissioner's decision if it supported by substantial evidence. After reviewing the record, I conclude that there is substantial evidence supporting the Commissioner's decision. The medical evidence of record does not support Plaintiff's claim that he is completely unable to perform work. There is substantial evidence in the record that supports the Commissioner's decision that Plaintiff is not disabled as defined by the Social Security Administration.

Accordingly, the decision of the Commissioner is AFFIRMED and Plaintiff's request for relief is DENIED.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: March 4, 2015